UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

L.M., et al.,

                  Plaintiffs,

      -against-

JEH CHARLES JOHNSON, Secretary,
U.S. Department of Homeland Security, et al.,

                  Defendants.
------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**14-CV-3833 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

On May 13, 2015, Plaintiffs L.M. et al.[1] filed an Amended Complaint on behalf of themselves and all similarly situated asylum applicants, seeking mandamus, injunctive, and declaratory relief against five officers ("Defendants") of the Department of Homeland Security ("DHS") and U.S. Citizenship and Immigration Services ("USCIS"). (Am. Compl. (Dkt. 12).) Plaintiffs allege that DHS and USCIS have unlawfully delayed adjudication of Plaintiffs' asylum applications in violation of the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the Due Process and Equal Protection Clauses of the United States Constitution. Defendants have moved to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Not. of Mot. (Dkt. 16-1).) For the reasons set forth below, Defendants' motion to dismiss is GRANTED for failure to state a claim as to all claims except Plaintiffs' notice-and-comment claim pertaining to the Controlled Application Review and Resolution Program ("CARRP"), for which the court requires supplemental briefing.

---

[1] The court previously granted Plaintiffs' request to proceed anonymously. (See June 24, 2014, Order (Dkt. 3).)

## I.   BACKGROUND

The INA provides that "[a]ny alien who is physically present in the United States . . . may apply for asylum." 8 U.S.C. § 1158(a)(1). The Secretary of Homeland Security or the Attorney General "may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General . . . if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of [Title 8]." Id. § 1158(b)(1)(A). The INA sets forth procedures that direct the Government to conduct an initial interview of an asylum applicant within 45 days of the filing of an application and to complete administrative adjudication of the application within 180 days of the filing of the application. Id. § 1158(d)(5)(A)(ii), (iii). However, Section 1158(d)(7)—entitled "No private right of action"— further provides that "[n]othing in [Section 1158(d)] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." Id. § 1158(d)(7).

Plaintiff L.M. is a citizen of Nicaragua who filed for asylum in August 2012 and was interviewed by USCIS on December 8, 2014. (Am. Compl. ¶ 105.) Her asylum application is still pending. (Id.) The other named Plaintiffs are all adult citizens of foreign countries from around the world whose asylum applications are pending and either have not been scheduled for an interview within the 45-day timeframe provided in Section 1158(d)(5)(A)(ii) or who have been interviewed but have not received final adjudication within the 180-day timeframe provided in Section 1158(d)(5)(A)(iii). (Id. ¶ 17.) Plaintiffs allege that the current backlog of asylum applications "has grown from 51,000 to 82,000" and that a two-year wait time for an initial interview violates the INA. (Id. ¶¶ 1, 2.) Additionally, Plaintiffs allege that Defendants' use of a

2

set of procedures, such as CARRP, for identifying asylum applications that present national security concerns is not authorized by the INA and creates a "substantive regime" that results in delays, "pretextual denials," and unequal treatment on the basis of a "particular ethnic, religious or national profile." (Id. ¶¶ 5, 43, 55, 56.) Plaintiffs finally contend that Defendants unlawfully prioritize the interview and adjudication of asylum applications filed by unaccompanied alien children ("UACs") "at the expense of backlogged cases that have been pending for years without interview." (Id. ¶¶ 41, 62.)

Defendants have moved to dismiss the Amended Complaint on the grounds that the court lacks subject-matter jurisdiction over Plaintiffs' claims and/or Plaintiffs have failed to state a claim upon which the court can grant relief.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

#### 1.    Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal of a claim when the court "lacks jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). "After construing all ambiguities and drawing all inferences in a plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." Id. (internal citation and quotation marks omitted). Courts evaluating Rule 12(b)(1) motions may consider evidence outside of the pleadings. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should

3

consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990) (internal citation and quotation marks omitted).

### 2. Rule 12(b)(6)

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing a complaint, the court must accept as true all allegations of fact, and draw a reasonable inference from these allegations in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a 'probability requirement,'" but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis in original) (quoting Twombly, 550 U.S. at 555).

4

**B.    Mandamus Act**

Plaintiffs seek a writ of mandamus directing Defendants to schedule all Plaintiffs for interview who have not already been interviewed and to interview and adjudicate all backlogged asylum cases. (Am. Compl. at 41.) The Mandamus Act grants district courts with jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. For relief under the statute, there must be "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989) (quoting Lovallo v. Froehlke, 468 F.2d 340, 343 (2d. Cir. 1972)).

**C.    Administrative Procedure Act**

Plaintiffs also seek a declaration that Defendants' failure to comply with the statutory timeframes and Defendants' practices of treating certain asylum applicants differently violate the APA. (Am. Compl. at 41.)

Section 555 of the APA provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA further provides that courts shall "compel agency action unlawfully withheld or unreasonably delayed." Id. § 706(1). The APA tempers this grant of judicial power by expressly limiting review where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." Id. § 701(a)(1), (2). "In determining reasonableness, we look to the source of delay—e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." Reddy v. CFTC, 191 F.3d 109, 120 (2d Cir. 1999). Courts also regularly apply the six factors set forth in Telecommunications Research and Action Center. v.

5

FCC, 750 F.2d 70, 80 (D.C. Cir. 1984) (the "TRAC factors"), which are: (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable, it may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed. See, e.g., Families for Freedom v. Napolitano, 628 F. Supp. 2d 535, 540 (S.D.N.Y. 2009); Hoo Loo v. Ridge, No. 04-CV-5553 (DLI) (RML), 2007 WL 813000, at *4 (E.D.N.Y. Mar. 14, 2007) ("In cases where the petition is seeking to compel action by immigration authorities, courts utilize the six-factor test articulated in [TRAC] to determine whether relief under the APA is warranted.").

In addition, Plaintiffs seek a declaration that Defendants' promulgation and use of CARRP violates the APA. (Am. Compl. at 42.) Plaintiffs allege that CARRP "constitutes a substantive agency rule within the meaning of 5 U.S.C. § 551(4)" and that "Defendants failed to provide a notice-and-comment period prior to [its] adoption" as required under Section 553 of the APA. (Id. ¶¶ 150, 151.)

The APA requires that when an agency engages in rulemaking, it must provide public notice of the proposed rule and an opportunity to comment. 5 U.S.C. § 553(b), (c).[2] However, Section 553 excludes the notice-and-comment requirement for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." Id. § 553(b)(A). "The APA's notice-and-comment requirements apply only to 'substantive' . . . rules."

---

[2] The APA excludes from the public comment provisions instances in which "a military or foreign affairs function of the United States" is involved. 5 U.S.C. § 553(a)(1); see also Rajah v. Mukasey, 544 F.3d 427, 436-37 (2d Cir. 2008).

Time Warner Cable Inc. v. FCC, 729 F.3d 137, 168 (2d Cir. 2013) (quoting Lincoln v. Vigil, 508 U.S. 182, 196 (1993)). "Since the APA itself does not define 'interpretive,' courts have established several general criteria to distinguish interpretive rules from 'substantive' or 'legislative' rules, which must comply with the APA's notice and comment provisions." N.Y. State Elec. & Gas Corp. v. Saranac Power Partners, L.P., 267 F.3d 128, 131 (2d Cir. 2001). Legislative or substantive rules are "those that create new law, right, or duties, in what amounts to a legislative act," while interpretive rules "do not create rights, but merely clarify an existing statute or regulation." Id. (internal citations and quotation marks omitted).

### D.     Due Process and Equal Protection

Plaintiffs also allege violations of the Due Process and Equal Protection Clauses of the United States Constitution. The Fifth Amendment provides that "no person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

An alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application. Landon v. Plasencia, 459 U.S. 21, 32 (1982); Ofosu v. McElroy, 98 F.3d 694, 700 (2d Cir. 1996) ("An alien has no constitutional right to initial admission to the United States."). However, once an alien has entered the country, either lawfully or unlawfully, "the legal circumstances change." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Aliens are entitled to due process and "must be afforded the opportunity to be heard at a meaningful time and in a meaningful manner." Burger v. Gonzales, 498 F.3d 131, 134 (2d Cir. 2007) (internal citations and quotation marks omitted). Similarly, the Equal Protection

Clause of the Fourteenth Amendment is not limited to citizens and applies "to all persons within the territorial jurisdiction" of the United States. Yick Wo v. Hopkins, 118 U.S. 356, 369 (1886).

### E.    Pesantez v. Johnson

The parties have directed the court's attention to Pesantez v. Johnson, No. 15-CV-1155 (BMC), 2015 WL 5475655 (E.D.N.Y. Sept. 16, 2015). In Pesantez, the plaintiffs were asylum applicants who alleged that their applications filed pursuant to the INA had been improperly and unreasonably delayed and sought relief pursuant to the Mandamus Act and the APA, like Plaintiffs here. See 2015 WL 5475655, at *1.

The court granted the defendants' motion to dismiss. First, the court denied the request for mandamus relief on the ground that Section 1158(d)(7) of the INA expressly disclaims a private right of action. Id. at *2. In doing so, the court noted that the plaintiffs cited no authority to support their position that they were entitled to mandamus relief to compel compliance with the deadlines imposed by Section 1158(d)(5)(A)(ii) and (iii). The court explained that it was "beyond serious dispute that mandamus pursuant to Section 1361 is unavailable to compel compliance with a statutory obligation when the underlying statute expressly disclaims a private right of action." Id.

Next, the court denied the plaintiffs' request for relief pursuant to the APA on the ground that granting the plaintiffs the relief they sought would only function to move the plaintiffs "to the front of the line" and "any broader mitigation of the harm done by the backlog of asylum adjudications in this country" would not be accomplished. Id. at *6. The court explained that although the plaintiffs' situation was not "ideal," "[j]udicial intervention in [the] case would necessarily involve an intrusion into the defendants' allocation of adjudicatory resources on the whole, and that is something [the] Court is 'institutionally ill-equipped to do.'" Id. (quoting Los

8

Coyotes Bands of Cahuilla & Cupeno Indians v. Jewell, 729 F.3d 1025, 1038 (9th Cir. 2013)). Although the court declined to find that the plaintiffs were entitled to relief under the APA, the court also made clear that it was not holding "that the APA is inapplicable to the instant case," and clarified that the "decision should not be read as holding that relief in this Court would never be available to an asylee facing a delayed adjudication." Id. at *5. Nonetheless, absent a clear showing that the plaintiffs had "suffered disparate treatment" or had been relegated to administrative "limbo," the court could not find that the delay was unreasonable. Id. at *6.

Although the present action is similar to Pesantez in that both groups of plaintiffs seek relief pursuant to the Mandamus Act and the APA against the same federal officers, the present action is distinguishable in that Plaintiffs here proffer additional causes of action. First, Plaintiffs in this action allege that Defendants have violated the APA not only by unreasonably delaying adjudication of their asylum applications, but also by failing to comply with the notice-and-comment provisions in promulgating CARRP. Second, Plaintiffs in the present action allege constitutional violations in addition to their claims under the INA and the APA. Thus, while educative, the Pesantez decision does not squarely address all of the issues in the present action.

## III. DISCUSSION

### A. The Mandamus Act

The court agrees with Pesantez and the other persuasive authorities cited below that mandamus relief is unavailable in this action. Section 1158(d)(7) of the INA plainly states that "[n]othing in [Section 1158(d)] shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1158(d)(7). The Mandamus Act authorizes the court "to compel an officer or employee of the United States or any agency thereof to perform a duty

9

owed to the plaintiff." 28 U.S.C. § 1361 (emphasis added). Here, Section 1158(d)(7) precludes mandamus relief by providing that "nothing in [Section 1158(d)]," including the 45- and 180-day timeframes contained in Section 1158(d)(5)(A)(ii) and (iii), creates any legally enforceable right or benefit against any officer of the United States or any agency.

In addition to Pesantez, other courts have reached the same conclusion. In Ivantchouk v. Attorney General, for example, the Eleventh Circuit construed the INA as the court does here and concluded that "[n]othing in Section 1158(d) creates a private right of action against the government." 417 F. App'x 918, 921 (11th Cir. 2011) (per curiam). Similarly, in Gjeluci v. Chertoff, a district court held that pursuant to Section 1158(d)(7), the plaintiff failed to articulate a 'clear nondiscretionary duty' owed by the defendants . . . ." No. 05-CV-72451, 2005 WL 1801989, at *4 (E.D. Mich. July 27, 2005); see also, e.g., Najeh v. Raufer, No. 15-CV-4217 (E.D. Pa. Nov. 2, 2015) (Dkt. 12) (citing 8 U.S.C. § 1158(d)(7) and dismissing the plaintiff's action).

Plaintiffs make three counterarguments: (1) Congress did not intend Section 1158(d)(7) to be a jurisdiction-stripping provision (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Mem.") (Dkt. 17) at 17-19); (2) Plaintiffs are not seeking to enforce a right of benefit (id. at 23); and (3) the timeframes contained in Section 1158(d)(5)(A)(ii) and (iii) are mandatory, and therefore Defendants are under a nondiscretionary duty to adjudicate Plaintiffs' asylum applications (id. at 20, 24). The court considers each argument in turn.

### 1. Jurisdiction-Stripping Provision

Plaintiffs contend that Section 1158(d)(7) is not a jurisdiction-stripping provision on two grounds: (1) the "well-settled" proposition that immigration statutes "should be interpreted to favor judicial review of administrative action" (id. at 17); and (2) the INA is "replete" with other

jurisdiction-stripping provisions, but Congress "deliberately" used different language in Section 1158(d)(7) (id. at 17, 18).

Plaintiffs are correct that the presumption favoring judicial review of administrative action is well-settled and that it has been applied to legislation concerning immigration. See, e.g., Kucana v. Holder, 558 U.S. 233, 251 (2010). Indeed, the Court in Kucana noted that it is assumed that Congress legislates with knowledge of this presumption. Id. at 252. But it is also true that "the presumption favoring judicial review [is] overcome [] whenever the congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.'" Block v. Cmty. Nutrition Inst., 467 U.S. 340, 351 (1984) (quoting Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 157 (1970)).

Plaintiffs are correct that unlike other sections of the INA, which specifically preclude judicial review of a determination made by the Attorney General, see, e.g., 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."), Section 1158(d)(7) merely states that the asylum-related timeframes contained within the INA are not legally enforceable rights. In other words, while Section 1158(d)(7) does not strip this court of subject matter jurisdiction or preclude judicial review, it does make clear that Plaintiffs do not have a private right of action under the INA itself. Accordingly, Plaintiffs are permitted to raise their claim in this court, but the INA provides them no relief, since it does not provide them with rights enforceable via mandamus. And for the reasons discussed elsewhere in this Memorandum and Order, nor do the APA (with respect to Plaintiffs' unreasonable delay claims) or the Constitution itself.

## 2.    Right or Benefit

Plaintiffs next argue that they "are not suing to enforce a right or benefit" against Defendants. (Pls.' Mem. at 23.) Instead, they argue that "they are asking for USCIS to be directed to adjudicate their asylum applications according to the proscribed [sic] statutory procedures" and that this is "most definitely not precluded by [Section 1158(d)(7)]." (Id.) Referring to Section 1158(d)(5)(A)(ii) and (iii) in conjunction with Section 1158(d)(7), Plaintiffs contend that the "only way to reconcile the two provisions is to construe this action as not being one for a substantive right of benefit." (Id. at 14.)

To be entitled to mandamus relief, there must be, among other things, "a clear right to the relief sought . . . ." Benzman v. Whitman, 523 F.3d 119, 133 (2d Cir. 2008). Section 1158(d)(7) plainly states that the 45- and 180- day timeframes are not to be construed as creating any right that is enforceable against the United States, its agencies, or its officers. Simply put, Congress has expressly barred Plaintiffs from claiming any legally enforceable right to have their applications adjudicated within the provided timeframes. The court therefore agrees with Pesantez that it is "beyond serious dispute that mandamus pursuant to § 1361 is unavailable to compel compliance with a statutory obligation when the underlying statute expressly disclaims a private right of action." Pesantez, 2015 WL 5475655, at *2. Even if the court were to accept Plaintiffs' strained argument that they are not seeking to enforce a right or benefit, that in itself would bar mandamus relief. Plaintiffs cannot seek mandamus relief, which requires "a clear right to the relief sought," and at the same time assert that they are not seeking to enforce any right. In other words, by asking the court to compel Defendants to timely schedule an interview and to timely adjudicate their applications (and leaving to Defendants whether ultimately to grant the applications), Plaintiffs are, in fact, seeking to enforce purported rights or benefits, even if

12

they are not going the final step and asking the court to compel Defendants to grant the asylum applications.

### 3.   Mandatory Timeframes and Nondiscretionary Duty

Finally, Plaintiffs contend that reading Section 1158(d)(7) to preclude the present action would render the timeframes listed in Section 1158(d)(5)(A)(ii) and (iii) "unenforceable and superfluous." (Pls.' Mem. at 20.) Plaintiffs argue that the use of the word "shall" means that Congress intended the timeframes to be mandatory and that the rules of statutory construction prohibit the conclusion that Section 1158(d)(7) precludes the enforcement of those timeframes. (Id. at 20-21.) The court is not persuaded. As a threshold matter, notwithstanding Congress's use of the word "shall," Plaintiffs' argument again ignores that a specific subsection of the INA expressly provides that the timeframes included in the statute are not substantive or procedural rights or benefits.

In addition, the Second Circuit has explained that "[a] statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision." St. Regis Mohawk Tribe v. Brock, 769 F.2d 37, 41 (2d Cir. 1985) (emphases in original) (quoting Fort Worth Nat'l Corp. v. Fed. Savings & Loan Ins. Corp., 469 F.2d 47, 58 (5th Cir. 1972)). "The legislature will not be deemed to have departed from this policy unless it clearly says so." Id. at 42. The Supreme Court has reached a similar conclusion, explaining that "if a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." United States v. James Daniel Good Real Prop., 510 U.S. 43, 63 (1993) (citing, inter alia, St. Regis, 769 F.2d at 41). In James Daniel, for example, the Supreme Court held that Congress's failure to specify a

13

consequence for noncompliance with the timing requirements of the statute at issue "implies that Congress intended the responsible officials administering the Act to have discretion to determine what disciplinary measures are appropriate when their subordinates fail to discharge their statutory duties." Id. at 64-65.

Plaintiffs attempt to distinguish the Second Circuit's decision in St. Regis on factual grounds and contend that the case "did not suggest, and there is no support for the proposition, that a statutory time frame is always unenforceable unless Congress specifies a penalty for non-compliance." (Pls.' Mem. at 26.) In St. Regis, the court dismissed the plaintiff's petition to review an Administrative Law Judge's order directing the plaintiff to repay disallowed expenditures on the grounds that the final determination of the grant officer had been made after the 120-day timeframe provided in Section 106(b) of the Comprehensive Employment and Training Act. 769 F.2d at 40. Section 106(b) provided that an investigation "shall" be conducted and a final determination "shall" be made "not later than 120 days after receiving the complaint." Id. The plaintiff argued that the agency had failed to issue a final determination within 120 days pursuant to the statute, and that reading the statute to allow further government action where the government failed to meet the 120-day deadline would be "inconsistent with Congress' use of the verb 'shall'" and "would render the 120-day deadline unenforceable and hence meaningless." Id. at 41.

Plaintiffs are correct that the circumstances in St. Regis and the present case differ in certain respects. In St Regis, the plaintiff was attempting to bar the government from acting because it had missed the 120-day statutory timeframe, while here, Plaintiffs seek an order from the court directing Defendants to act after their failure to do so within the statutory timeframes. But contrary to Plaintiffs' contention, that factual distinction does not render St. Regis or its

14

analysis inapplicable to the present action. Both <u>St. Regis</u> and <u>James Daniel</u> use broad language that is not solely applicable to situations where the plaintiff is arguing that the government is barred from acting. The court in <u>St. Regis</u> characterized the standard as a "general rule" that a timeframe is not mandatory unless it both expressly requires action within a particular timeframe and specifies a consequence for failure to act. <u>Id.</u> That general rule is applicable here.

The court also disagrees with Plaintiffs that this reading renders the timeframes provided in Section 1158(d)(5)(A)(ii) and (iii) "superfluous." (Pls.' Mem. at 20.) As the Supreme Court in <u>James Daniel</u> recognized, statutory timeframes without specified consequences may "impl[y] that Congress intended the responsible officials administering the [statute] to have discretion to determine what disciplinary measures are appropriate when their subordinates fail to discharge their statutory duties." 510 U.S. at 64. The lack of specific statutory consequences combined with the plain language of Section 1158(d)(7) indicate that Congress did not intend for asylum applicants to utilize a civil action in federal court to seek the Government's compliance with the INA's 45- and 180- day timeframes. The court again empathizes with Plaintiffs, and urges Defendants and their agencies to take meaningful actions to reduce the current backlog in the adjudication of asylum applications filed by individuals such as Plaintiffs—who are not UACs.[3] But, unfortunately for Plaintiffs, the court does not have the power to compel such a result under the Mandamus Act.

**B.    Administrative Procedure Act**

Plaintiffs bring two claims under the APA: (1) Defendants' failure timely to adjudicate Plaintiffs' asylum applications constitutes unreasonable delay in violation of Section 706 of the

---

[3] Before filing their motion to dismiss, Defendants appear to have engaged in substantial settlement discussions with Plaintiffs' counsel. (<u>See, e.g.</u>, Defs.' Ltr.-Mot. for Ext'n in Time to Answer (Dkt. 9) at 1 ("This time period is needed by the parties to attempt to resolve this matter without litigation. And to this end, the parties continue to work diligently together.").) The court encourages the parties to continue to work together to address the current backlog in asylum applications.

APA (Am. Compl. ¶ 144), and (2) Defendants promulgated CARRP without providing a notice-and-comment period in violation of Section 553 of the APA (id. ¶ 152).

### 1. Section 706 of the APA: Unreasonable Delay

Plaintiffs contend that Defendants have violated Section 706 of the APA by failing to adjudicate asylum applications within a reasonable period of time. (Id. ¶ 144.) Section 555 of the APA provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). It further provides that courts shall "compel agency action unlawfully withheld or unreasonably delayed." Id. § 706(1). The APA tempers this grant of judicial power by expressly limiting review where the "statutes preclude judicial review" or the "agency action is committed to agency discretion by law." Id. § 701(a)(1), (2). Thus, the "only agency action that can be compelled under the APA is action legally required." Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63 (2004) (emphasis in original).

It is worth reiterating that the court in Pesantez did not "hold that the APA [was] inapplicable to the instant case." Pesantez, 2015 WL 5475655, at *5. Rather, the court found that "it [did] not seem . . . that by moving [the plaintiff] to the front of the line, any broader mitigation of the harm done by the backlog of asylum adjudications in this country will be accomplished." Id. at *6. The court also declined to conclude that "USCIS enjoys 'unfettered discretion to relegate aliens to a state of limbo, leaving them to languish there indefinitely' . . . ." Id. at *5 (quoting Kim v. Ashcroft, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004)). In Kim, the court held that the plaintiff's complaint seeking to compel adjudication of his application for an adjustment of immigration status, which had been delayed for around 40 months, survived the defendants' motion to dismiss. 340 F. Supp. 2d at 386. Although the court noted that the decision whether to grant or deny an adjustment application was wholly discretionary, id. at 389,

16

it also held that "defendants' failure to take any action runs afoul of section 555(b) [of the APA]," id. at 393.

While again empathizing with Plaintiffs' position, the court concludes that relief under Section 706 of the APA is unavailable in the present case. "In determining reasonableness, we look to the source of delay—e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." Reddy, 191 F.3d at 120. Additionally, courts routinely apply the TRAC factors. The D.C. Circuit has further found it is appropriate to "refuse[] to grant relief, even though all the other factors considered in TRAC favor[] it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (internal citation and quotation marks omitted).

Plaintiffs allege a backlog of asylum applications that "has grown from 51,000 to 82,000, and the minimum wait time for an initial interview on an asylum case is now about two years." (Am. Compl. ¶ 1.) Plaintiffs provide data indicating that the number of asylum cases filed in January 2012 was 3,341, while the number of cases filed in January 2015 was 6,099. (Id. ¶ 58.) Plaintiffs also allege that Defendants "give near-exclusive priority to asylum cases involving UACs at the expense of backlogged cases that have been pending for years without interview." (Id. ¶ 62.)

As the court in Pesantez recognized, "[j]udicial intervention in this case would necessarily involve an intrusion into the defendants' allocation of adjudicatory resources on the whole, and that is something that [the] Court is 'institutionally ill-equipped to do.'" 2015 WL 5475655, at *6 (quoting Los Coyotes, 729 F.3d at 1038). Similarly, the Fourth Circuit has

17

recognized that in dealing with a "backlog of tens of thousands of cases," the agency charged with handling asylum applications "operates in an environment of limited resources, and how it allocates these resources to address the burden of increasing claims is a calculation that courts should be loathe to second guess." Blanco de Belbruno v. Ashcroft, 362 F.3d 272, 280 (4th Cir. 2004). In light of these principles, the court holds that Plaintiffs have failed adequately to allege that Defendants' actions in addressing the recent influx of asylum applications are unreasonable under the APA.[4]

Assuming as true the allegations and information provided in the Amended Complaint, Plaintiffs' contention that the delays are unreasonable fails as a matter of law. As indicated by the data provided by Plaintiffs, the number of asylum applications filed every month in the United States has soared in recent years. (Am. Compl. ¶ 58.) For example, Plaintiffs recently provided the court with supplemental USCIS data showing that the number of asylum applications filed just in June 2015 surpassed 8,300, significantly more than in prior years. (See Pls.' Ltr. (Dkt. 23), Ex. B (Dkt. 23-2).) This number represents more than twice as many asylum applications than were filed in June 2012 and June 2013 (4,115 and 3,957, respectively), and over 2,600 more than were filed in June 2014 (5,618). (Am. Compl. ¶ 58.) It is not unreasonable for delays to occur and a backlog to develop where an agency with limited resources is attempting to adjudicate an ever-increasing number of applications, or for the

---

[4] Defendants and Plaintiffs devote portions of their reply and sur-reply memoranda to addressing whether this action presents a nonjusticiable political question. The court does not reach this issue.

In addition, Plaintiffs argue that they do not seek to be moved to the "front of the line," thereby sending other applicants back, but rather, seek a system in which applications are adjudicated in the order they are filed, without any prioritization or delays based on the type of applicant. In other words, Plaintiffs seek to "restore[] some basic fairness to an adjudicative system that currently lacks any." (Pls.' Dec. 4, 2015, Ltr. (Dkt. 34) at 1.) The court understands Plaintiffs' argument, and therefore does not rely on the rationale that ordering relief here would necessarily "move" other applicants back by moving Plaintiffs to the front of the line. However, the fact that the system includes various forms of prioritization and delay does not mean that it lacks basic fairness, nor does it entitle Plaintiffs to relief under the APA.

18

administration to prioritize the interview and adjudication of asylum applications filed by UACs. While two years of delay is not insubstantial, the court cannot find, as a matter of law, that Plaintiffs have alleged facts that would entitle them to the relief requested under the APA. See, e.g., Saleh v. Ridge, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding that a five-year delay in adjustment of asylum status was not unreasonable given the limited number of available adjustments and the volume of applications in the system).

### 2. Section 553 of the APA: Notice and Comment

Plaintiffs allege that Defendants promulgated CARRP in violation of Section 553 of the APA. Plaintiffs contend that CARRP "constitutes a substantive agency rule within the meaning of 5 U.S.C. § 551(4)" and that "Defendants failed to provide a notice-and-comment period prior to" its adoption. (Am. Compl. ¶¶ 150, 151.) Plaintiffs claim that CARRP was established in a 2008 memorandum as "a procedure for processing and adjudication of immigration applications, including asylum cases, that raise 'national security concerns' as that term is uniquely defined in the memo." (Id. ¶ 42.) Although Plaintiffs acknowledge that the INA requires Defendants to perform background checks to determine eligibility for asylum, they allege that Defendants "use CARRP to establish wider grounds of ineligibility, higher standards of proof, and differential treatment of claims filed by people who fit a particular ethnic, religious or national profile . . . ." (Id. ¶ 43.) Defendants counter by asserting that "CARRP is part of the agency procedure and practice that is exempted from the APA's notice and comment provisions." (Defs.' Mem. of Law in Supp. of Mot. to Dismiss (Dkt. 16) at 18.)

The APA provides that general notice of proposed rulemaking shall be given and that an opportunity to participate in the rulemaking shall be provided. 5 U.S.C. § 553(b), (c). Section 553 excludes the notice-and-comment provisions for "interpretative rules, general

statements of policy, or rules of agency organization, procedure, or practice." Id. § 553(b)(A).

Under Section 551, a "rule" is defined as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . . ." Id. § 551(4).

"The APA's notice-and-comment requirements apply only to 'substantive' . . . rules." Time Warner Cable, 729 F.3d at 168 (quoting Lincoln, 508 U.S. at 196). When determining whether an agency action is subject to the notice-and-comment exemption under Section 553, the court looks not to labels given by the agency, but rather to the nature of the impact of the agency action. See Lewis-Mota v. Sec'y of Labor, 469 F.2d 478, 481-482 (2d Cir. 1972) ("[T]he label that the particular agency puts upon its given exercise of administrative power is not, for our purposes, conclusive; rather it is what the agency does in fact."). Substantive rules create new law, rights, or duties, whereas procedural rules do not alter the rights or interests of parties, although they may alter the manner in which the parties present themselves or their viewpoints to the agency. Time Warner Cable, 729 F.3d at 168. Generally, "notice and comment is required if the rule makes a substantive impact on the rights and duties of the person subject to regulation." Aluminum Co. of Am. v. FTC, 589 F. Supp. 169, 178 (S.D.N.Y. 1984). If there is no substantive impact, the administrative action is exempt from Section 553. Id. (citing Pickus v. U.S. Bd. of Parole, 507 F.2d 1107, 1112 (D.C. Cir. 1974); Lewis-Mota, 469 F.2d at 481)). Rules are "generally considered procedural so long as they do not 'change the substantive standards by which the [agency] evaluates' applications which seek a benefit that the agency has the power to provide." Nat'l Sec. Counselors v. CIA, 931 F. Supp. 2d 77, 107 (D.D.C. 2013) (quoting JEM Broad. Co. v. FCC, 22 F.3d 320, 327 (D.C. Cir. 1994) (emphasis in original)).

20

The INA mandates that "a procedure for the consideration of asylum applications" shall be established. 8 U.S.C. § 1158(d)(1). Next, the statute requires that the procedure established under Section 1158(d)(1) shall provide that "asylum cannot be granted until the identity of the applicant has been checked against all appropriate records or databases maintained by the Attorney General and by the Secretary of State . . . to determine any grounds on which the alien may be inadmissible to or deportable from the United States, or ineligible to apply for or be granted asylum." Id. § 1158(d)(5)(A)(i). Aliens are not eligible for asylum when "there are reasonable grounds for regarding the alien as a danger to the security of the United States," id. § 1158(b)(2)(A)(iv), or where the alien is described in subclauses (I), (II), (III), (IV), or (VI) of Section 1182(a)(3)(B)(i), all of which describe certain terrorist activities.[5] See id. § 1158(b)(2)(A).

Plaintiffs devote significant effort attempting to explain how CARRP operates and allege that Defendants "use CARRP to establish wider grounds of ineligibility, higher standards of proof, and differential treatment of claims filed by people who fit a particular ethnic, religious or national profile, as the overwhelming majority of CARRP-affected asylum cases involve applicants from Arabic, Muslim and/or Middle Eastern Countries." (Am. Compl. ¶ 43.) Plaintiffs assert that CARRP does not "dovetail or coincide" with the grounds enumerated in Section 1158(b)(2)(A) and that CARRP effectively "creates two different substantive regimes for adjudication of asylum cases" that ultimately results in "extraordinary processing and adjudication delays," "pretextual denials," and "unequal treatment." (Id. ¶¶ 54-56.)

The court lacks an adequate basis from the parties' briefing to determine whether Plaintiffs have adequately alleged that CARRP was promulgated in violation of Section 553 of

---

[5] The parties do not address the APA's notice-and-comment exclusion for instances in which "a military or foreign affairs function of the United States" is involved. 5 U.S.C. § 553(a)(1); see also Rajah v. Mukasey, 544 F.3d 427, 436-37 (2d Cir. 2008).

the APA. It may be that Defendants can show that, as alleged, CARRP does not require notice and comment, and indeed they have requested an opportunity to file supplemental briefing on the issue. (See Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss (Dkt. 18) at 2-3 n.2.) In addition, as the court is dismissing all of Plaintiffs' other claims, it is not clear whether Plaintiffs are prepared to move forward with an action premised solely on a notice-and-comment claim under the APA. Accordingly, the court holds in abeyance Defendants' motion to dismiss the notice-and-comment claim. Within fourteen (14) days of the date of entry of this Memorandum and Order, the parties are DIRECTED to file a joint letter in which (1) Plaintiffs state whether they are prepared to move forward with only the notice-and-comment claim, and (2) the parties propose a schedule for supplemental briefing on the question of whether the notice-and-comment claim should be dismissed for failure to state a claim.

## C.     Due Process and Equal Protection Claims

Plaintiffs have also alleged that "Defendants' failure to interview Plaintiffs' and the class' asylum applications, in the manner and for the periods of time complained of (typically, requiring them to wait for up to two years for an initial interview, and often for additional months if not years after that for a decision), . . . violates the Due Process and Equal Protection clauses of the US [C]onstitution . . . ." (Am. Compl. ¶ 144.) Plaintiffs argue that "extreme delays, and arbitrary and unequal treatment of Plaintiffs [sic] cases" violate the Due Process Clause and that "Defendants' exclusive prioritizing of entire classes of asylum cases, including childrens' [sic] asylum cases," violates the Equal Protection Clause. (Pls.' Mem. at 7.)

### 1.     Due Process

Aliens within the country "are entitled to due process" and "must be afforded the opportunity to be heard at a meaningful time and in a meaningful manner." Burger, 498 F.3d

at 134 (internal citations and quotation marks omitted). "Parties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process." Garcia-Villega v. Mukasey, 531 F.3d 141, 149 (2d Cir. 2008) (internal citation and quotation marks omitted).

The Second Circuit has previously considered lengthy delays and due process questions in the immigration context. In Arostegui v. Holder, 368 F. App'x. 169, 171 (2d Cir. 2010) (summary order), for example, the court considered a plaintiff's argument that DHS violated his due process rights by failing to initiate removal proceedings for nearly five years. The court held that the plaintiff failed to allege that he suffered any prejudice and that the delay allowed him to stay in the country for an additional five years, and that reliance on the delay when "arranging his affairs" was "too tenuous to be persuasive." Id. at 172. In addition, the Sixth Circuit has squarely rejected a due process challenge to a delay in adjudicating an asylum proceeding. In Vang v. Gonzales, 237 F. App'x 24, 31 (6th Cir. 2007) (unpublished), the court considered the argument that the Government's fourteen-year delay in completing the plaintiffs' asylum proceedings deprived them of due process. The court rejected the plaintiffs' reliance on the 45-day timeframe set out in Section 1158(d)(5)(A)(ii) by pointing to the plain language of Section 1158(d)(7) ("Nothing in this subsection shall be construed to create any substantial or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers . . . ."), and its prior precedent that recognized that the Government's delay in scheduling or conducting immigration proceedings does not violate due process. Id.; see also Elia v. Gonzales, 431 F.3d 268, 275-76 (6th Cir. 2005) (no procedural or substantive due process violation for five-year delay in granting deportation hearing).

The court concludes that Plaintiffs have failed adequately to allege a due process violation. First, Section 1158(d)(7) explicitly disclaims the creation of any enforceable "substantive or procedural right or benefit." Accordingly, Plaintiffs have suffered no cognizable deprivation of rights. Second, courts that have considered delays in the immigration context that far surpass the two-year delays alleged by Plaintiffs have rejected due process claims. See, e.g., Arostegui, 368 F. App'x at 172 (five-year delay not a violation of due process); Vang, 237 F. App'x at 31 (fourteen-year delay not a violation of due process); Mudric v. Attorney Gen., 469 F.3d 94, 99 (3d Cir. 2006) (no due process violation for four-year delay in processing asylum application because "federal immigration laws do not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible"); Elia, 431 F.3d at 275-76 (five-year delay not a violation of due process). Therefore, Plaintiffs have failed adequately to allege that they are entitled to relief on this claim.

### 2. Equal Protection

The Supreme Court has made it clear that equal protection "applies to aliens, for '[w]hatever his status under the immigration laws, an alien is surely a person in any ordinary sense of that term.'" Jean v. Nelson, 472 U.S. 846, 875 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 210 (1982)). Classifications in the immigration context are subject to rational basis review. Domond v. INS, 244 F.3d 81, 87 (2d Cir. 2001) ("Distinctions between different groups of aliens are subject to rational basis review."); Aguilar De Polanio v. Dep't of Justice, 398 F.3d 199, 203 (2d Cir. 2005) ("[A]ny rational justification will suffice to uphold a classification under the immigration laws."). "Distinctions on the basis of nationality may be drawn in the immigration field by the Congress or the Executive and must be upheld so long as they are not wholly irrational." Rajah v. Mukasey, 544 F.3d 427, 438 (2d Cir. 2008) (alterations removed)

(quoting Narenji v. Civiletti, 617 F.2d 745, 747 (D.C. Cir. 1979)). Where rational basis review applies, "the burden is ultimately on the plaintiff to negate 'every conceivable basis which might support the state's action, whether or not the basis has a foundation in the record.'" Immaculate Heart Cent. Sch. v. N.Y. State Pub. High Sch. Athletic Ass'n, 797 F. Supp. 2d 204, 210 (N.D.N.Y. 2011) (quoting Smith v. Defendant A, 2009 WL 1514590, at *4 (S.D.N.Y. May 29, 2009) (quoting Price v. N.Y. State Bd. of Elections, 540 F.3d 101, 108 (2d Cir. 2008)). "When neither the complaint nor the non-moving party's opposition negate 'any reasonably conceivable state of facts that could provide a rational basis' for the challenged classification, a defendant's motion to dismiss an equal protection claim will be granted." Id. at 211 (quoting Sullivan v. City of New York, No. 08-CV-7294 (LTS) (MHD), 2011 WL 1239755, at *4-5 (S.D.N.Y. Mar. 25, 2011)).

Plaintiffs offer no grounds that plausibly indicate a lack of any rational basis for Defendants' classifications among asylum applications. Indeed, Defendants have made an adequate showing that the administration's prioritization of applications filed by UACs and its handling of applications under the CARRP program satisfy rational basis review. Thus, Plaintiffs' conclusory allegation of an Equal Protection violation cannot withstand Defendants' motion to dismiss.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED as to all claims except the notice-and-comment claim pertaining to CARRP. With respect to that claim, within fourteen (14) days of the date of entry of this Memorandum and Order, the parties are DIRECTED to file a joint letter in which (1) Plaintiffs state whether they are prepared to move forward with the notice-and-comment claim, and (2) the parties propose a schedule for

25

supplemental briefing on the question of whether the notice-and-comment claim should be

dismissed for failure to state a claim.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      December 1, 2015

NICHOLAS G. GARAUFIS
United States District Judge